UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CONNIE LAYING,

    Plaintiff,

v.

TWIN HARBORS GROUP HOME ASSOCIATION, a Washington Public Benefit Corporation, and DAVID HOFFMAN, an individual,

    Defendants

Case No. 05-5260

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION AND BACKGROUND**

    Plaintiff Connie Laying filed the present Title VII gender discrimination in employment and Washington Law Against Discrimination (WLAD) action against defendants Twin Harbors Group Home Association (Twin Harbors) and David Hoffman claiming she was discriminated against based on her gender. Plaintiff alleges that certain acts of Defendant David Hoffman created a hostile work environment which, in turn caused her constructive discharge. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendants'

ORDER - 1

motion is granted and this case dismissed in its entirety.[1]

Twin Harbors, a non-profit, provides residential care services for developmentally disabled adults. Twin Harbors maintains four different group homes located in Grays Harbor County, Washington. Twin Harbors employs approximately twenty-four people, inclusive of staff and managers and is governed by a nine-member Board of Directors. The organizational structure of Twin Harbors provides that each developmentally disabled client is assigned an individual caregiver who provides a variety of services, including administering medications, cooking meals, cleaning and scheduling appointments. Caregivers are managed by staff supervisors, who in turn report to the Twin Harbors Program Coordinator, Jeanne Moore. Ms. Moore reports to the Twin Harbors Administrator/Director David Hoffman, who in turn reports to the Board of Directors. As the Administrator/Director, Mr. Hoffman is responsible for the day-to-day management of the organization. However, he was not solely responsible for employment decisions. Mr. Hoffman did not routinely determine the daily staff schedules; Ms. Moore was primarily responsible for this task. The Board determines compensation packages and is consulted on employee terminations. Consultation among supervisors, Ms. Moore and Mr. Hoffman, occurs in promotions.

Connie Laying is a fifty year old single mother living in Aberdeen, Washington. She was hired by Twin Harbors as a caregiver in December of 2000. After approximately two years, Ms. Moore and Mr. Hoffman jointly determined to promote Ms. Laying to the position of staff supervisor. Although at times Ms. Laying expressed her discomfort in the position of staff supervisor as feeling overwhelmed and under qualified, at no time did Twin Harbors' management have any significant concerns about the quality of her performance.

The Plaintiff's complaint asserts that from the inception of her employment with Twin Harbors she was subjected to repeated, unwanted romantic advances by Mr. Hoffman. Plaintiff

---

[1] Because of the grant of summary judgment this Court finds it unnecessary to rule on Defendants' Motion to Amend Answer.

ORDER - 2

contends this conduct constitutes gender discrimination through the creation of a hostile work environment.

Shortly after first beginning work at Twin Harbors, Ms. Laying learned from a co-worker that Mr. Hoffman had inquired as to whether she was dating anyone. She in fact was involved in a long-term relationship. Subsequently, over the course of her entire period of employment with Twin Harbors, Mr. Hoffman asked Plaintiff to go out a half dozen times. Ms. Laying declined these invitations. During the course of her employment Mr. Hoffman sent flowers to Ms. Laying. These deliveries occurred at both her home and at work and were accompanied by personal cards signed by Mr. Hoffman; one such card signed "Love You - Dave." Mr. Hoffman's romantic gift-giving was not limited to flowers. On one occasion he gave her a gold lady's watch. Plaintiff told Mr. Hoffman she did not welcome the gift and that she wanted him to take it back.

Ms. Laying repeatedly and explicitly told Mr. Hoffman that she did not welcome his advances, that she was uncomfortable with them, that his behavior was interfering with her work and her relationships with co-workers and that she wished to be left alone. Among her co-workers it was well known that Mr. Hoffman had a romantic interest in Ms. Laying and that she was troubled and emotionally upset by his open display of his interest in her. Ms. Laying attempted to avoid Mr. Hoffman as much as possible. This was difficult as on occasion Mr. Hoffman would visit her workplace in fulfilling his supervisory duties as administrator.

On July 19, 2005, Ms. Moore visited the Plaintiff at her home after Ms. Laying had called in sick. The two had a conversation in which they discussed the recent death of one of the Plaintiff's resident clients. The Plaintiff, for the first time, expressed her discomfort with Mr. Hoffman and the stress and anxiety being caused by his repeated romantic overtures. Ms. Moore responded that she would go back to the office and tell Mr. Hoffman to "back off" because of the emotional difficulty it was causing Ms. Laying. Before Ms. Moore had the opportunity to speak to Mr. Hoffman, he once again had flowers delivered to the Laying address. When Mr. Hoffman returned home from work he

ORDER - 3

found the flowers and vase in which they came smashed on his front porch.  Plaintiff admits that her boyfriend committed this act.  In response, Mr. Hoffman called Plaintiff's boyfriend and they had words.  ds.  Although the Plaintiff was not a party to the conversation, she alleges that Mr. Hoffman told her boyfriend that he had a ".357 waiting" for him and that they should meet and "settle the problem."  Thereafter, Ms. Laying telephoned the Twin Harbors office, leaving a message that she was quitting.

## GENDER DISCRIMINATION

The standard for summary judgment is set forth in Rule 56©) of the Federal Rules of Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir.1987).  The Defendants maintain that the Plaintiff has not, and cannot, set forth specific facts to demonstrate a genuine issue of material fact for trial.

Hostile working environment claims based on gender discrimination are recognized by both Title VII and WLAD.  See, e.g., <u>Nichols v. Azteca Restaurant Enter., Inc</u>., 256 F.3d 864 (9th Cir.2001); <u>Estevez v. Faculty Club of University of Washington</u>, 129 Wn.App. 774, 790, 120 P.3d 579 (2005).  Because the state civil rights statute substantially parallels Title VII, federal cases interpreting Title VII are persuasive authority for the construction of the state statute.  <u>Estevez</u>, at 793-794.  Accordingly, analysis of federal law applies with equal force to the WLAD claim. <u>Hardage v. CBS Broadcasting Inc</u>. 427 F.3d 1177, 1183 (9th 2005).[2]

Title VII of the Civil Rights Act makes it illegal for an employer to discriminate against an

---

[2]In light of the parallel between Title VII and the WLAD, the Court will exercise supplemental jurisdiction over the state law claim even though all federal claims for relief are dismissed. See, 28 U.S.C. § 1367; <u>Brown v. Lucky Stores, Inc</u>. 246 F.3d 1182, 1187 (9th Cir. 2001).

ORDER - 4

employee with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. §§ 2000e.  A plaintiff may show a violation of Title VII by proving the existence of a hostile work environment. <u>Sischo-Nownejad v. Merced Community College Dist</u>., 934 F.2d 1104, 1109 (9th Cir.1991). Plaintiff alleges a claim for hostile work environment.

A hostile work environment exists when the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment. <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 786 (1998).  The conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment; an environment a reasonable person in the plaintiff's position would find hostile or abusive considering all the circumstances. <u>Faragher</u>, at 787; <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81 (1998); <u>Ellison v. Brady</u>, 924 F.2d 872, 879 (9th Cir.1991).  The assessment of whether an environment is objectively hostile "requires careful consideration of the social context in which the particular behavior occurs and is experienced by its target." <u>Oncale</u>, at 81. The victim must perceive the environment as hostile; the conduct must actually alter the conditions of the victim's employment.  <u>Harris v. Forklift Systems, Inc</u>., 510 U.S. 17, 21-22 (1993).  Whether an environment is hostile or abusive depends on all the circumstances including; the frequency of the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. <u>Harris</u>, at 23; <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 271 (2001).  The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness of frequency of the conduct. <u>Ellison</u>, at 878.  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not qualify as changes in the terms and conditions of employment. <u>Faragher</u>, at 788.

Similarly, to prove a claim of constructive discharge under Title VII, the plaintiff must establish that the work environment became so intolerable that a reasonable person would be

ORDER - 5

compelled to resign.  The question of whether the work environment is so intolerable as to compel resignation is purely objective.  <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129, 146-47 (2004). The constructive discharge can be regarded as an aggravated case of hostile work environment. <u>Id</u>. For an atmosphere of harassment or hostility to be actionable, the offending behavior must be sufficiently severe or pervasive to alter the victim's employment conditions and create an abusive working environment.  A hostile environment constructive discharge claim entails something more: working conditions so intolerable that a reasonable person would have felt compelled to resign. <u>Suders</u>, at 148.

Plaintiff alleges that she was employed by defendants from December 2000 until her working conditions became so intolerable that she was forced to resign her employment on July 19, 2005. Plaintiff alleges that the conditions were hostile, because Mr. Hoffman made frequent and persistent romantic advances to Ms. Laying, that these advances were unwanted and spurned and made her uncomfortable to the point that she felt the necessity to resign her employment.  Defendants argue that plaintiff has not established a prima facie case since the conduct Ms. Laying complains of is not severe and pervasive as to alter her conditions of employment.

Using the factors of frequency, severity, and intensity of interference with working conditions, this Court cannot say that a reasonable woman in Ms. Laying's position would consider the terms and conditions of her employment altered by the incidents of which she complains.  "[N]ot all workplace conduct that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII." <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 67 (1986). As noted in <u>Holly D. v. California Institute of Technology</u>, 339 F.3d 1158, 1174-1175 (9th Cir. 2003):

> It is not easy, let alone desirable, to attempt to regulate sexual attractions among persons working together or to proscribe romances that may develop and even flourish in the workplace. Some of these relationships will, if nature is allowed to take its course, develop between persons at different levels in the hierarchy, just as hierarchical boundaries have failed to contain romance throughout history.  The workplace is not and should not be a sterile or barren space, and it is not the job of the legislature or the courts to make it so.  However, not all attempts at courtship or coupling are

ORDER - 6

legitimate, and all three branches of government have emphatically declared that it is our role to enjoin and remedy predatory workplace conduct so that all workers may earn a living with dignity, free from sexual harassment or abuse. Given the imbalance of power, persistent unwanted sexual attention from a supervisor has the potential to result in significant harm. A supervisor may find love or companionship with one he oversees, but he may not use his position to extort sexual favors from an unwilling employee. In the end, given all of the intangibles involved in the development of relationships between human beings, we proceed with particular caution when examining claims of sexual harassment based on implicit rather than explicit threats to condition employment benefits or detriments on an employee's participation in sexual acts.

(Internal citations omitted). The legal standard for establishing workplace harassment is high so that Title VII does not become a "general civility code" for the workplace. Faragher, at 788.

The behaviors identified by Ms Laying and summarized in this order are not sufficiently severe and pervasive to give rise to a hostile work environment claim, as a matter of law. Taken collectively, these circumstances are not sufficient to establish the working environment was objectively abusive.

The Court notes the evidence in this record falls far short of the severity of conditions in cases where this Circuit has allowed hostile work environment claims to proceed. See, e.g., EEOC v. National Educ. Ass'n, Alaska, 422 F.3d 840, 843 (9th 2005)(finding triable issue whether work environment was sufficiently severe to be illegal under Title VII where supervisor frequently shouted profanities at female employees and touched them in a physically threatening manner); Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir.2002) (finding hostile work environment where employer verbally and physically abused plaintiff because of his race); Nichols v. Azteca Rest. Enters., 256 F.3d 864, 872-73 (9th Cir.2001) (finding a hostile work environment where a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times a day); Draper v. Coeur Rochester, 147 F.3d 1104, 1109 (9th Cir.1998) (finding hostile work environment where plaintiff's supervisor made repeated sexual remarks to her, told her of his sexual fantasies and desire to have sex with her, commented on her physical characteristics, and asked over a loudspeaker if she needed help changing her clothes); EEOC v. Hacienda Hotel, 881 F.2d 1504 (9th Cir.1989)( repeated vulgarities, sexual remarks, and requests for sexual favors by a hotel

ORDER - 7

employee subjected female maids to severe and pervasive sexual harassment that altered the terms and conditions of their employment).  See also Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1111 (9th Cir.2000) (though supervisor's sexually-related comments about women were offensive, conduct was not frequent, severe, or abusive enough to interfere unreasonably with plaintiff's employment, as required for Title VII sexual harassment claim); Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir.2000) (single incident of co-worker touching victim's stomach and breast under her sweater did not rise to the level of actionable harassment).

Our sister jurisdictions have considered circumstances similar to those present here and have uniformly held such conduct does not give rise to a hostile work environment claim.  See, e.g., Alagna v. Smithville R-II School Dist., 324 F.3d 975, 980 (8th Cir. 2003)( although male teacher made repeated visits to the female counselor's office to discuss his failed relationships and intimate details of his personal life, and frequently ended their conversations by touching her arm and telling her he loved her and that she was very special, he never discussed sexual activities related to his relationships, never sexually propositioned her, and never touched her in any area other than her arm, work environment of female counselor was not so intolerable as to compel a reasonable person to resign, as required to establish a claim sex discrimination under Title VII ); Gupta v. Florida Bd. of Regents, 212 F.3d 571, 583-585 (11th Cir. 2000)(comments by assistant professor's supervisor, including telling professor she was beautiful, asking her out, frequently calling her at home, and touching her on knee, hand and wrist did not amount to sexual harassment); Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993)(claims that her supervisor asked her for dates, called her a "dumb blonde," put his hand on her shoulder several times, placed "I love you" signs in her work area and attempted to kiss her did not meet standard for actionable sexual harassment).

In the present case, Plaintiff suffered no physically threatening or humiliating conduct at the hands of Mr. Hoffman. The advances by Hoffman were neither overtly sexual nor objectively

ORDER - 8

offensive, even if they were unwelcome. The pursuit of a date with Plaintiff, along with the related outpourings of flowers, cards, and telephone calls do not rise to the level of "severe" or "pervasive" sexual harassment.  This court concludes Ms. Laying has not alleged facts that, as a matter of law, show her interactions with Hoffman unreasonably interfered with her job performance or were sufficiently severe or pervasive to alter her conditions of employment and create an abusive working environment.  Viewing the evidence in the light most favorable to Ms Laying, Mr. Hoffman's conduct, which may have been offensive and inappropriate toward Ms. Laying, did not so pollute the workplace that it altered the conditions of employment.  Defendants' motion for summary judgment on Ms. Laying's Title VII and WLAD hostile work environment constructive discharge claims will be granted.

**CONCLUSION**

For the reasons set forth above, Defendants Twin Harbors Group Home Association and David Hoffman are entitled to summary judgment of dismissal of Plaintiff's claims (both state and federal) in their entirety.

ACCORDINGLY,

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment [Dkt. # 14] is GRANTED, and this case is dismissed in its entirety.

2. Defendants' Motion to Amend Answer [Dkt. #25] is stricken as MOOT.

DATED this 23rd Day of January, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 9